[No. 26066. Department One. June 9, 1936.]

THE STATE OF WASHINGTON, *on the Relation of the City of Port Orchard et al., Respondents,* v. THE DEPARTMENT OF PUBLIC SERVICE *et al., Appellants.*[1]

[1]Reported in 58 P. (2d) 352.

The *Attorney General, Don Cary Smith, Assistant,
Bogle, Bogle & Gates,* and *Edward G. Dobrin,* for appellants.

*Francis M. Applegate* and *Ralph E. Purves,* for respondents City of Port Orchard *et al.*

*Metzler & Metzler* and *R. E. Ostrander,* for respondent Bremerton-Tacoma Stages, Inc.

TOLMAN, J.—The Puget Sound Navigation Company, which had theretofore, under a certificate from the department of public service, operated ferries and provided a ferry service between the city of Seattle on the one hand and Bremerton and Port Orchard on the other (as well as other ferries from Seattle to other Kitsap county points), made application to the department for permission to discontinue the running of its boats to Port Orchard and (in effect) to substitute therefor bus service between Port Orchard and Bremerton, whereby through service between Port Orchard and Seattle would be continued at the same rates and with equal or greater frequency. Protests were filed, a hearing was had before the department, evidence was submitted, and all interested parties were heard at length. The department made findings of fact to the effect that the Puget Sound Navigation Company is the owner of the bus service (and the certificate under which it operates), known as Bremerton Transit Lines, and

"  . . .  by and through its trustee, the Navigation Company on May 1, 1935, established through service between Seattle and Port Orchard via Bremerton

Ferry and bus from Bremerton to Port Orchard, and via Ferry to Manchester and bus to Port Orchard. The schedules for this service are shown in Exhibit '2' attached to the application. It proposes to furnish service between Bremerton and Port Orchard by its bus service and to discontinue boat service between said points. Certificate No. 72, (Exhibit '3') provides that 'no local service shall be rendered under this certificate between a point one-half mile east of Port Orchard and Pleasant Valley Junction, and no local service shall be rendered between points one-half mile east of Port Orchard to Pleasant Valley Junction on the one hand and points Pleasant Valley Junction to Bremerton on the other hand.'

"Tacoma Bus Company, holder of Certificate No. 345, authorizing passenger and express service between Tacoma and Bremerton via Port Orchard, protests and complains that the bus service between Bremerton and Port Orchard established by applicant and proposed to be used in lieu of boat service conflicts with its rights under its Certificate No. 345.

"We find that this contention is without merit. The mere fact that the Navigation Company busses run over the same highway between Port Orchard and Bremerton as the Tacoma Bus Company's busses, creates no conflict. The Navigation Company operation is only in connection with its through service from Seattle to Port Orchard. Its certificate authorizes no local service.

"The mayor and citizens of Port Orchard and vicinity also protest the discontinuance of boat service. Port Orchard business men do business mostly with Seattle, which they can reach either by way of Bremerton or by bus or auto to Manchester and thence by ferry landing either at Alki Point or Colman Dock, according to the schedule chosen. The rate for automobile and driver on the ferry is fifty cents. By way of Bremerton it is a dollar. The relative locations of the points mentioned are shown by map in evidence as Exhibit '1'. For automobile travel the Manchester route has been found not only cheaper but generally more convenient. The result has been that automo-

bile and auto truck travel by way of the Bremerton ferry has almost ceased. Witnesses for protestants, while strenuously protesting the discontinuance of the ferry service, still stated that when they drive they take the Manchester route. Travel by ferry to Bremerton is almost wholly foot passengers.

"For the reason that fares from Port Orchard and Bremerton to Seattle are the same, the books of the Navigation Company have not been kept in such a way that the Bremerton and Port Orchard revenues can be segregated. For this reason the Navigation Company made a ten day test from April 15 to April 24 inclusive, the results of which are tabulated in Exhibit '10'. This shows for the ten day period a total of 11 trucks, 81 autos and 1045 passengers, or an average per trip of .076 trucks, .546 autos and 6.9 passengers. Exhibit '10' shows that of the total business for the ten day period 3.8 per cent was passenger business, 3.2 per cent automobile, and 2.6 per cent truck business between Port Orchard and Bremerton. Exhibit '11' shows a net loss of $4,322.15 freight revenues due to wharf operation at Port Orchard in 1934. Exhibit '13' shows freight revenues of $686 collected for freight shipments to and from Port Orchard during the first three months of this year. During the same period the Navigation Company's subsidiary, Bremerton Auto Freight, Inc., collected $1,201.59 between the same points.

"The coaches used by the Navigation Company are thirty passenger cars. At Bremerton they drive on the dock in close proximity to the ferry slip. Captain Peabody testified that shelter would be provided where passengers can get on and off the busses without getting wet, and within about 25 feet from where they will get on or off the ferry.

"Testimony was given by Mr. Lyons of the Tacoma Bus Company that the road between Port Orchard and the Bremerton Ferry is 'the worst in the state;' that it is rough and crooked and frequently blocked by slides of falling trees in winter, and unsafe because children have no other place to play. It was agreed by all parties that the Supervisor and Examiner hear-

ing the application might inspect the road and use the information thus obtained. We drove over the road, keeping at all times within the speed limits provided by law, both outside and inside city limits, and found the running time under these conditions to be nineteen and one-half minutes, and the distance about nine and one-half miles.

"We find that it is not a bad road. We saw no children playing in the street, although there may be at times. At one point there are several houses built close to the highway. Mr. Hershey, road supervisor, introduced by protestants, testified that the road had been blocked in the winter. The longest he had known it to be closed was an hour to an hour and a half. The Manchester road was also closed a short time last winter from the Harper Wye to Manchester.

"Protests were principally directed against transfers, the drive around the bay and the loss of water transportation. A transfer is always more or less objectionable for obvious reasons. The transfer at Bremerton, however, will be made as comfortable and convenient as possible. Also those living along the bus lines and desiring to reach the docks will be convenienced. From the testimony offered it is apparent that the people of Port Orchard and vicinity do not want the ferry service discontinued. They feel that Port Orchard would lose prestige as a seaport without a ship. They also object to the ride around the Inlet to Bremerton. So far as getting to Seattle is concerned, however, there is no loss of time, as they leave Bremerton on the same ferry either way. All of these objections deserve and have received consideration, together with all the other facts shown by the record. It was evident, too, that some of the witnesses at least do not feel kindly toward the Navigation Company. They think that service to Port Orchard has been neglected. However, if the petition of the company is not granted it will still be rendering the service. The hearing was not on a complaint against the service.

"To be considered on the other hand is the fact that more than ninety-five per cent of the business of the Navigation Company between Seattle, Bremerton and

Port Orchard is Bremerton business. It has built the fine ferry KALAKALA in order to improve its service to its patrons. This ferry has a capacity of 2,000 passengers and 110 automobiles. Captain Peabody testified that it could not be duplicated for less than $800,000, and that the CHIPPEWA is worth about $600,000. It is proposed to use both of these ferries on the Bremerton route. The CHIPPEWA makes the run from Seattle to Bremerton in fifty minutes and the KALAKALA in about forty-five minutes.

"Under the proposed plan Port Orchard will have in the place of the seven ferry schedules sixteen bus schedules, eight by Bremerton and eight by Manchester. The fare by both routes will remain the same as now, 42 cents one way and 80 cents for a round trip either from Port Orchard or Bremerton, or via Manchester.

"The evidence shows that the revenues derived from the Bremerton-Port Orchard operation are nowhere near compensatory. Captain Peabody testified that the time required daily for this run is three hours, one-sixth of the total operating time, and costs fifty to sixty thousand dollars a year. The run to Port Orchard, however, could not properly be charged with the whole of this amount as additional cost, but at best it must still be said that the revenue derived from the Port Orchard service is not comparable to the cost of rendering the service.

"If Port Orchard were to be left with little or no service the case would be different. It will have more frequent service, even if less desirable in the view of Port Orchard residents. Port Orchard witnesses complain that the dock is in bad shape, one witness saying that it has a hole in it 'you could throw a cow through.' This may be a hyperbole, but at least the witness meant that the dock is badly out of repair. The Navigation Company agreed that if ferry service is to be continued to Port Orchard, a new dock will be needed before long, and that if it were to be large enough to accommodate the KALAKALA it would cost about $25,000. The testimony shows that it is impossible now to land the KALAKALA at the Port Orchard dock. One witness tes-

tified that Port Orchard people do not demand that the KALAKALA run to Port Orchard; that they would be satisfied with two or three trips of the CHIPPEWA in the forenoon and a like number in the afternoon and evening.

"The Horluck Transportation Company operates a boat twenty trips a day between Port Orchard and Bremerton for a five cent fare. Bremerton Auto Freight, Inc., furnishes freight service between Seattle, Bremerton and Port Orchard.

"We do not think that the objections of Port Orchard citizens are of sufficient gravity to require the Navigation Company to continue a service so little patronized as the ferry between Port Orchard and Bremerton at a serious loss. Mayor Givens, while strenuously opposing the application, conceded that he did not think that the CHIPPEWA should be required to run across from Bremerton for seven passengers. No doubt Port Orchard citizens would prefer to ride to Bremerton on a boat, without transfer, but we do not feel justified in ordering the service continued in the face of the meager returns from it, and that the Navigation Company is losing money not only on this service but on its entire operations. Port Orchard will not be left without ample and reasonable service, even though less satisfactory to them. There are compensating advantages in the more frequent service.

"Upon the record we find that the application of the Navigation Company should be granted.

ORDER

"WHEREFORE, IT IS ORDERED

"(1) That the application of the Puget Sound Navigation Company to discontinue ferry service between Bremerton and Port Orchard, Washington, be, and hereby is, granted, effective upon ten days' notice posted in its terminals and on ferry, and filing amended time schedule.

"(2) That the protest and complaint of Tacoma Bus Company be, and hereby is, overruled and denied."

Being dissatisfied, both the city of Port Orchard and the Bremerton-Tacoma Stages, Inc., sought writs of

review. By order of the superior court, based on stipulation, the two proceedings were consolidated and heard as one upon the record certified up by the department. The trial court held that the proposed substituted service was in contravention of the rights of the Bremerton-Tacoma Stages, and, in effect, that the city of Port Orchard was entitled to some boat service, and entered its judgment setting aside the order of the department and remanding the cause to the department for further proceedings not inconsistent with its rulings.

The department, the Puget Sound Navigation Company and the Bremerton Transit Lines all join in an appeal from that judgment.

■ The department heard and saw the witnesses, and the same written record of the testimony which was before the trial court is now before us. This record we have carefully studied, and are fully convinced that it reveals nothing which would justify holding that the department acted arbitrarily, capriciously, or upon a fundamentally wrong basis. On the contrary, allowing for the natural, local pride of a seaport city in its shipping and the blow to that pride which must follow the loss of all of its sizable boats, together with the annoyance naturally attendant upon the inauguration of a new system, we feel that the findings of the department are sustained by the great weight of the evidence, except as to one minor point which does not affect the results.

■ But little more need be said, and that little has reference mainly to the rights of the Bremerton-Tacoma Stages. The service which it protests is not a service between any point on its line and Bremerton, or *vice versa,* but it is a through service from Port Orchard to Seattle and return. The stage company never had any right in such through service, and

it is of no interest to it whether the navigation company furnishes that service by bus and boat or by boat alone. It is, however, possible that some living along the highway between Port Orchard and Bremerton have heretofore paid the stage company its ten cents fare to be carried to Bremerton or to the dock in Port Orchard, thus increasing the cost to the passenger of the trip to Seattle and bringing some small revenue to the stage company. There is no positive evidence of any substantial revenue so derived, and the mere possibility of an infinitesimal loss is not sufficient to warrant the courts in interfering, even if the law afforded a remedy for such a loss. In discussing this identical question in the case of *North Bend Stage Line v. Denney,* 153 Wash. 439, 279 Pac. 752, we said:

" . . . and that, in so far as appellant will suffer any decrease of revenue by reason of the establishment by respondent of through service to Seattle, such loss will be a damage of which appellant cannot complain and for which the law affords no remedy."

See, also, *Auto Interurban Co. v. Department of Public Works,* 153 Wash. 479, 279 Pac. 738, and *North Bend Stage Line v. Washington Motor Coach Co.,* 167 Wash. 9, 8 P. (2d) 302.

Some argument is advanced upon the theory that the order of the department permits an abandonment of the service to Port Orchard, which is required of the navigation company by the certificate under which it acts. We think there is no abandonment. Under the facts properly found by the department, the same or better service is given. That busses are used in part to take the place of the water movement in supplying the service, does not affect the result or constitute an abandonment of the service required of the navigation company.

We are convinced that, under the facts shown by the

record, the questions to be decided were peculiarly questions to be decided by the department. Nothing is revealed which will warrant the courts in substituting their judgment for that of the department.

The judgment of the trial court is reversed, and the order of the department affirmed.

STEINERT, GERAGHTY, and MITCHELL, JJ., concur.

MILLARD, C. J. (dissenting)—I can not concur in the majority opinion. I am of the view that the judgment should be affirmed.